Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| KARLA MARIE ROMÁN TORRES Y OTROS<br><br>Apelados<br><br>v.<br><br>JUAN CORTÉS VALLE<br><br>Apelante | KLAN202400823 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Sobre: Incumplimiento de Contrato; Desahucio por Falta de Pago; Desahucio por Incumplimiento<br><br>Caso Núm. AU2023CV00106 Consolidado con: AU2023CV00129 |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Rivera Marchand y la Juez Aldebol Mora

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

El apelante, el señor Juan Cortés Valle, comparece ante nos para que dejemos sin efecto la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala de Aguada, el 7 de agosto de 2024, notificada el día 9 del mismo mes y año. Mediante la misma, el foro primario declaró *No Ha Lugar* a la solicitud de sentencia sumaria promovida por el apelante y desestimó la demanda sobre desahucio incoada por este en el caso civil AU2023CV00129. A su vez, determinó que en el caso civil AU2023CV00106, sobre cumplimiento específico de contrato, el negocio jurídico realizado entre las partes mediante el documento intitulado *Arrendamiento y Opción de Compra,* fue una compraventa de inmueble con precio aplazado.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia Parcial* apelada.

**I**

El 17 de febrero de 2023, la parte apelada, la señora Karla Marie Román Torres y el señor Orvin Joel Acevedo Ruiz (los Acevedo Román), presentó la causa de acción en el caso civil número AU2023CV00106, pliego que posteriormente enmendó. En esencia, alegó que, el 2 de marzo de 2021, en calidad de optante, suscribió un contrato de arrendamiento y opción de compraventa con el apelante, respecto a un inmueble sito en el municipio de Aguada. Conforme adujo, cumplió con todas las obligaciones de pago allí establecidas, incluyendo, entre estas, la amortización de las mensualidades de la hipoteca. A su vez, indicó que, como parte de las condiciones pactadas, se obligó a procurar el refinanciamiento de la propiedad. Sin embargo, afirmó que, pese a haber dado curso a dicha gestión, la misma se vio interrumpida en septiembre del año 2022, a causa de los inconvenientes relacionados al paso del huracán Fiona por Puerto Rico.

En su demanda, la parte apelada destacó que, como parte de los acuerdos, se pactó que el contrato en controversia habría de tener una vigencia de dieciocho (18) meses, con opción de extender el mismo por seis (6) meses. No obstante, indicó que, a pesar de que la extensión aludida debía constar por escrito, toda vez que las partes se mantuvieron en comunicación activa por razón del trámite del refinanciamiento, la obligación suscrita entre ellos y el apelante fue objeto de novación para extender el término del contrato en cuestión. Así, afirmó que la vigencia del contrato se extendió por el término adicional establecido. Por otro lado, la parte apelada sostuvo que el apelante estaba efectuando ciertos actos contrarios a sus obligaciones. En específico, expresó que este interfirió con sus gestiones para lograr el refinanciamiento de la propiedad. De este modo, luego de afirmar que había efectuado mejoras a la propiedad, ello en virtud del derecho de opción que quería ejercer, y tras

exponer una alegación sobre simulación contractual, solicitó al Tribunal de Primera Instancia que ordenara al apelante abstenerse de su conducta. De igual forma, solicitó una compensación de $500,000.00 por concepto de los daños emocionales resultantes de las actuaciones del apelante, así como una partida por razón de los honorarios de abogado aplicables.

Por su parte, el 1 de marzo de 2023, el apelante presentó una demanda de desahucio y cobro de dinero en contra de la parte apelada, en el caso civil número AU2023CV00129, pleito que se consolidó con el caso civil AU2023CV00106. En el escrito, afirmó que la parte apelada adeudaba una suma ascendiente a cinco mil veinte dólares con ochenta y seis centavos ($5,020.86) por concepto de cánones de arrendamiento vencidos. Poco después, el 31 de marzo siguiente, este presentó *Contestación a la Demanda y Solicitud de Desestimación.* En el pliego, negó todas las imputaciones hechas en su contra y afirmó que, contrario a lo alegado, al 31 de agosto de 2022, fecha acordada por las partes para ejercer el derecho de opción de compraventa, la parte apelada no obtuvo el financiamiento convenido. A su vez, planteó que la parte apelada disponía hasta el 1 de agosto de 2022 para solicitar la extensión de la vigencia del contrato, más se reafirmó en que ello no aconteció. Añadió que, contrario a lo argüido, nunca llegaron a otro acuerdo que tuviera el efecto de novar la obligación, por lo que se sostuvo en que la vigencia del contrato en disputa no se extendió. De este modo, y tras afirmar que las alegaciones de la demanda en su contra eran insuficientes para justificar la concesión de un remedio en ley a favor de la parte apelada, el apelante solicitó al Tribunal de Primera Instancia que proveyera para su desestimación, de conformidad con lo dispuesto en la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5).

La parte apelada presentó su *Moción en Oposición a Desestimación.* En esencia, se reafirmó en los argumentos expuestos en la demanda del caso civil AU2023CV00106. Así, tras entender sobre las respectivas posturas de los comparecientes, el 11 de mayo de 2023, el Tribunal de Primera Instancia notificó una *Orden,* mediante la cual declaró *No Ha Lugar* la desestimación solicitada por el apelante.[1]

Luego de varios trámites procesales, el 1 de diciembre de 2023, el apelante presentó una *Moción Solicitando Sentencia Sumaria.*[2] En esta ocasión, reprodujo los argumentos de su contestación a la demanda y se reafirmó en la inexistencia de controversia de hechos alguna que impidiera la disposición sumaria del asunto. Específicamente, planteó que las únicas cuestiones a dirimirse eran: 1) determinar si las contraprestaciones pactadas en el contrato de arrendamiento y opción de compra celebrado el 2 de marzo de 2021 habían prescrito al vencer el término contractual el 31 de agosto de 2022, o si debía concederse un periodo adicional; 2) determinar si alguna de las partes incumplió con las cláusulas contractuales acordadas y; 3) establecer si procedía una orden de desahucio en contra de la parte apelada, conforme a la ley y la jurisprudencia aplicable. Enfatizó que, según el contrato, el último

---

[1] Mediante *Resolución* emitida el 29 de junio de 2023, este Tribunal *denegó* la expedición de un recurso de *certiorari* con nomenclatura KLCE202300640. En este, el señor Cortés Valle solicitaba la revocación de la referida determinación.

[2] Apéndice del recurso, págs. 98-134. La parte apelante acompañó su *Moción Solicitando Sentencia Sumaria* con la siguiente prueba documental: 1) Certificación de Matrimonio compuesto por la señora Karla Marie Román Torres y el señor Orvin Joel Acevedo Ruiz (los Acevedo Román); 2) Escritura sobre Capitulaciones Matrimoniales de los Acevedo Román; 3) Escritura Sobre Hipoteca del inmueble en controversia; 4) Contrato de Arrendamiento y Opción de Compra en controversia; 5) Requerimiento de Admisiones a Karla M. Román Torres; 6) Requerimiento de Admisiones a Orvin J. Acevedo Ruiz; 7) Contestación a Requerimiento de Admisiones por Karla M. Román Torres; 8) Contestación a Requerimiento de Admisiones por Orvin J. Acevedo Ruiz; 9) captura de pantalla de mensajes de texto entre el señor Cortés Valle y la señora Román Torres; 10) Certificación de Póliza de Seguros Múltiples; 11) Pago Hipotecario BCU; 12) Declaración Jurada de Eileen Woo Cortés, Supervisora de Cierres Hipotecarios de la Cooperativa de Ahorro y Crédito de Aguadilla; 13) captura de pantalla del reporte sobre el paso del huracán Fiona por Puerto Rico; 14) Estimado de Préstamo Hipotecario por Coop Rincón; 15) captura de pantalla de comunicación por correo electrónico sobre el estatus de la solicitud del préstamo hipotecario; 16) Solicitud de Desalojo de la Propiedad Villa Ofelia.

día hábil para que la parte apelada ejerciera la opción de compra fue el 31 de agosto de 2022, sin embargo, a tal fecha, la parte apelada no había completado las gestiones necesarias para el cierre hipotecario, ni obtenido la aprobación del financiamiento requerido. Además, indicó que la parte apelada dejó de pagar los cánones de arrendamiento correspondientes a los meses de julio y agosto de 2022. Expuso, que los incumplimientos imputados le ocasionaron pérdida económica, angustias mentales y daños en su propiedad. Por tal razón, peticionó al Tribunal de Primera Instancia que dictara sentencia sumaria en su favor, reclamó el pago de los cánones de arrendamiento adeudados y solicitó la celebración de una vista para atender la cuantía de los daños alegados.

En respuesta, el 21 de diciembre de 2023, la parte apelada presentó su *Moción en Oposición a Solicitud de Sentencia Sumaria.*[3] En síntesis, arguyó que existían hechos esenciales en controversia que impedían que el Tribunal resolviera el asunto sumariamente, debido a que, según alegado, ameritaban ser evaluados mediante prueba testifical y documental. En específico, planteó que el Tribunal de Primera Instancia debía evaluar, mediante la celebración de una vista evidenciaria, los siguientes asuntos: 1) si se prorrogó el término de dieciocho (18) meses convenido por las partes en el contrato en controversia; 2) si existió una simulación del contrato de arrendamiento con opción de compra, en cuyo caso la intención primordial del señor Cortés Valle habría sido vender la propiedad y no arrendarla; 3) determinar si alguna de las partes incumplió con las cláusulas establecidas en el contrato de opción de compra; y 4) si el apelante era responsable de los daños alegados por los apelados. Por lo cual, estimó que, al haber controversia de

---

[3] Apéndice del recurso, págs. 248-258. Los apelados acompañaron su *Moción en Oposición a Solicitud de Sentencia Sumaria* con parte de la transcripción de la deposición que se le tomó al apelante el 9 de mayo de 2023.

hechos, el Foro primario debía celebrar un juicio en su fondo. Es preciso señalar que la parte apelada no ofreció una relación concisa ni organizada de los hechos que alegaba controvertidos, tampoco vinculó sus planteamientos con los párrafos numerados por la parte promovente, ni identificó mediante señalamientos específicos a declaraciones juradas, prueba documental u otros documentos obrantes en el expediente la evidencia que, a su juicio, sustentaba tales controversias. En su lugar, limitó su presentación a un fragmento de una deposición que se le tomó al apelante.

El 7 de enero de 2024, el apelante presentó una *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria* en la que reiteró los argumentos contenidos en su moción original. Sostuvo que, contrario a lo planteado por la parte apelada, el caso de epígrafe versaba sobre un negocio jurídico de arrendamiento con opción a compra que no pudo completarse dado a que la parte apelada no obtuvo la aprobación de un préstamo hipotecario dentro del término estipulado, y cuya solicitud fue denegada. Expuso que, en lugar de aceptar la imposibilidad de completar la transacción, la parte apelada optó por iniciar un proceso judicial extenso con el fin de forzar una compraventa que, según alegó, debió haberse realizado hace más de un año y medio. Además, enfatizó que, en la *Moción en Oposición a Solicitud de Sentencia Sumaria,* la parte apelada no incluyó evidencia documental adicional a la que ya constaba en el récord electrónico judicial y no refutó el derecho sustantivo planteado, lo que, a su entender, propiciaba la adjudicación sumaria del caso y derrotaba la causa de acción de la parte apelada.

Tras anunciar nueva representación legal y con el beneficio de un término adicional concedido por el Tribunal de Primera Instancia, el 4 de abril de 2024, la parte apelada presentó una

*Moción Suplementaria en Oposición a Moción de Sentencia Sumaria.*[4] En esta, reiteró que el caso no era susceptible de adjudicación sumaria, ya que existían controversias de hecho que requerían la celebración de una vista evidenciaria. Alegó que el asunto principal versaba sobre la verdadera intención de las partes al momento de contratar y que el Tribunal debía evaluar la conducta de estas antes, durante y después de la firma del contrato para determinar cuál fue el negocio jurídico que realmente quisieron llevar a cabo. Al abundar, la parte apelada argumentó que, aunque el contrato suscrito se tituló como de *Arrendamiento y Opción de Compra*, el verdadero acuerdo entre las partes fue la compraventa de la propiedad. Planteó que el acuerdo suscrito respondía únicamente a una estrategia financiera necesaria para poder completar la transacción, toda vez que la parte apelada acababa de crear una nueva corporación y necesitaba generar dos planillas contributivas bajo esa entidad para poder cualificar para el financiamiento hipotecario. En consecuencia, afirmó que el contrato de arrendamiento con opción de compra fue un contrato simulado, diseñado exclusivamente para justificar la posesión inmediata del inmueble, mientras se concretaba el financiamiento del precio pactado. Además, enfatizó que, durante el periodo contractual, realizó pagos, desembolsos y gestiones encaminadas al cierre hipotecario, lo que evidenciaba su voluntad de cumplir con la alegada compraventa originalmente convenida. Bajo tales circunstancias, la parte apelada planteó que resultaba

---

[4] Apéndice del recurso, págs. 462-485. Los apelados acompañaron su *Moción Suplementaria en Oposición a Moción de Sentencia Sumaria* con la siguiente prueba documental: 1) Declaración Jurada de los Acevedo Román; 2) copia de cheque núm. 20002909 a nombre de Juan Cortés Valle, por la cantidad de sesenta y cinco mil quinientos noventa dólares con veinte centavos ($65,590.20); 3) copia de cheque núm. 20002908 a nombre de Juan Cortés Valle por la cantidad de tres mil setecientos ochenta dólares con sesenta y nueve centavos ($3,780.69); 4) borrador del Contrato de Arrendamiento y Opción de Compra; 5) correo electrónico de la Cooperativa A/C Aguadilla dirigido a los Acevedo Román; 6) captura de pantalla entre comunicaciones con el representante de Rincón Coop, Alex del Valle.

indispensable la celebración de una vista evidenciaria para que el Tribunal de Primera Instancia pudiese dirimir la verdadera intención del negocio jurídico llevado a cabo entre las partes.

Habiendo evaluado los escritos de las partes, el 7 de agosto de 2024, el Tribunal de Primera Instancia emitió la *Sentencia Parcial* que nos ocupa. Como parte del dictamen emitido, el Foro primario emitió las siguientes veintiocho (28) determinaciones de hechos que, a su entender, estaban incontrovertidos:

1. La demandante Karla Marie Román Torres es mayor de edad, casada con el señor Orvin Joel Acevedo Ruiz, es comerciante y vecina de Aguada, Puerto Rico.

2. El demandante Orvin Joel Acevedo Ruiz es mayor de edad, casado con la señora Karla Marie Román Torres, es comerciante y vecino de Aguada, Puerto Rico.

3. Los bienes del matrimonio compuesto por los demandantes están organizados y administrados bajo el "Régimen de Absoluta Separación de Bienes y Responsabilidades".

4. El dueño registral de la propiedad en cuestión es el señor Juan Cortés Valle, parte demandada de epígrafe. El inmueble está localizado en el sector Villa Ofelia del Barrio Piedras Blancas del término municipal de Aguada, Puerto Rico y consta inscrito al folio 271 del tomo 259 de Aguada, finca número 14,108, en el Registro de la Propiedad de Aguadilla, con número de catastro 096-020-209-97-000. La propiedad se describe a continuación:

> RÚSTICA: Predio de terreno sito en el Barrio Piedras Blancas del término municipal de Aguada, Puerto Rico, identificado como solar número dos (2), con una cabida superficial de NOVECIENTOS VEINTIOCHO PUNTO SETECIENTOS ONCE METROS CUADRADOS (928.711 M.C.) en lindes por el NORTE, con área dedicada a uso público, al SUR, con Adalberto E. Moret y Elvis Galloza Acevedo, al ESTE, con solar número uno (1) y OESTE, con solar número tres (3).
> Enclava una casa para fines residenciales.

5. La propiedad tiene una hipoteca constituida a favor de Baxter Credit Union.

6. El 2 de marzo de 2021, las partes en el pleito de marras suscribieron un documento titulado: "ARRENDAMIENTO Y OPCIÓN DE COMPRA".

7. El referido documento consta de seis (6) páginas y contiene un inciso "A. Con relación al CONTRATO DE ARRENDAMIENTO", y un inciso "B. Con relación al CONTRATO DE OPCIÓN DE COMPRAVENTA".

8. En la parte B con relación al CONTRATO DE OPCIÓN DE COMPRAVENTA, los demandantes se obligaron a aportar la suma de setenta y cinco mil quinientos noventa dólares con veinte centavos ($75,590.20) como depósito de la Opción.

9. El precio pactado de compraventa fue de TRESCIENTOS QUINCE MIL DÓLARES ($315,000.00).

10. El demandado recibió la suma de SETENTA Y CINCO MIL QUINIENTOS NOVENTA DÓLARES CON VEINTE CENTAVOS ($75,590.20).

11. La suma indicada en el párrafo anterior era lo que le correspondía al demandando de la compraventa. El restante era el balance de la deuda hipotecaria con Baxter Credit Union.

12. Los demandantes realizaban el pago de la hipoteca directamente al demandado e inicialmente realizaron tres (3) pagos por adelantado correspondiente a los meses: marzo, abril y mayo de 2021.

13. La cantidad fijada como canon de arrendamiento equivale al pago mensual de la hipoteca que grava el inmueble objeto de pleito.

14. En un momento dado hubo una disminución en el pago de la hipoteca de diez dólares con cuarenta y tres centavos ($10.43) hecho que el demandado notificó a los demandantes para que redujeran dicha suma.

15. El pago hipotecario actual de la propiedad es de mil doscientos cuarenta y ocho dólares con quince centavos ($1,248.15).

16. El demandado previo a contratar con los demandantes había anunciado la venta de su propiedad en los clasificados, siendo la intención de este vender la propiedad y no alquilarla.

17. Los demandantes se han mantenido realizando los pagos de la hipoteca.

18. El señor Cortés Valle es el asegurado principal de una póliza de seguro vigente de tipo "Homeowners" emitida por la Cooperativa de Seguros Múltiples de Puerto Rico.

19. El término del contrato fue de dieciocho (18) meses a partir del primero (1) de marzo de 2021 y finalizando el treinta y uno (31) de agosto de dos mil veintidós (2022), con opción para extender el mismo por seis (6) meses adicionales.

20. El contrato estipulaba que la extensión del contrato debía ser por escrito.

21. El señor Cortés Valle y la señora Román Torres se comunicaban mediante mensajes de texto.

22. La señora Román Torres era quien se comunicaba con el señor Cortés Valle.

23. El 31 de agosto de 2022, a las 4:07 p.m., la señora Román Torres le envió un mensaje de texto al demandado, indicándole que le notificaría tan pronto la cooperativa le informara cuándo sería el cierre. A las 4:08 p.m., el señor Cortés Valle le contestó: "Claro, Gracias.".

24. El 10 de junio de 2022, los demandantes solicitaron un préstamo hipotecario en la Cooperativa de Ahorro y Crédito de Aguadilla (Agua Coop) para el pago del balance con Baxter Credit Union de la propiedad comprada al demandado

25. El 21 de octubre de 2022, Agua Coop denegó la solicitud del préstamo hipotecario presentada por los demandantes luego de una revisión efectuada por su Junta de Directores.

26. El 28 de noviembre de 2022, los demandantes recibieron un estimado sobre una solicitud de préstamo

hipotecario de la Cooperativa de Ahorro y Crédito de Rincón (Coop Rincón).

27. El 16 de marzo de 2023, a las 9:28:30 a.m., el Oficial de Originación de Hipotecas de Coop Rincón, el señor Alex L. Del Valle Aldebol, le comunicó el "ESTATUS" de la solicitud del préstamo hipotecario descrito en el párrafo anterior a la señora Román Torres y le indicó que del comité de crédito le estaban solicitando una serie de documentos necesarios para la evaluación del préstamo hipotecario solicitado, especificando cada uno de estos.

28. El 19 de febrero de 2023, a las 11:06:18 a.m., el demandado le cursó una misiva a la parte demandante solicitándole, entre otras cosas, que remitieran un pago por la suma de $1,250.20 para completar el canon de arrendamiento solicitado de $2,500.00 mensuales, efectivo el mes de febrero 2023 y solicitándole el desalojo de la propiedad en o antes del 28 de febrero de 2023.

Conforme concluyó, la prueba documental sometida a su escrutinio estableció que las partes pactaron la compraventa del inmueble por la suma de $315,000.00, de los cuales los Acevedo Román pagaron $75,590.20 como depósito de compraventa y aplazaron el otorgamiento de la escritura y el pago del balance adeudado. En dicho contexto, el Juzgador resolvió que, del análisis de las cláusulas contractuales, surgía que el documento intitulado *Contrato de Arrendamiento y Opción de Compra*, otorgado el 2 de marzo de 2021, no era un acuerdo de arrendamiento con opción de compra, sino un contrato de compraventa con precio aplazado.

No obstante lo anterior, el Foro primario expresó, en la alternativa, que aún si el acuerdo suscrito entre las partes el 2 de marzo de 2021 fuese interpretado como un contrato de opción de compraventa, los Acevedo Román habrían ejercido la opción dentro del término aplicable. Razonó que las comunicaciones llevadas a cabo entre la señora Román Torres y el apelante, particularmente el mensaje en el que ella informó que gestionaba un préstamo hipotecario y la respuesta del apelante ("Claro, gracias"), tuvieron el efecto de "novar" la obligación, específicamente extendiendo el plazo pactado para el ejercicio de la opción. Según concluyó, las partes no pactaron forma específica sobre cómo el optante tendría que

notificar su intención de compra, por lo que entendió que las antedichas comunicaciones por mensaje de texto entre la señora Román Torres y el apelante fueron suficientes para extender el término del contrato.

En consecuencia, el Foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria promovida por el apelante y en su lugar, desestimó la demanda sobre desahucio en el caso civil AU2023CV00129 por entender que hubo una novación en cuanto al término del contrato en controversia. Por otro lado, sobre la demanda de cumplimiento específico incoada por la parte apelada en el caso civil AU2023CV00106, el Tribunal concluyó que se trataba de un asunto de interpretación contractual y que, a la luz de las cláusulas pactadas, el acuerdo suscrito constituía una compraventa válidamente perfeccionada por las partes. El Tribunal ordenó al señor Cortés Valle informar el balance adeudado de la hipoteca y a los Acevedo Román consignar dicha suma para completar el pago de la compraventa del inmueble. Dispuso, además, la celebración de una vista evidenciaria para determinar el monto del balance pendiente y atender la reclamación de daños presentada por los Acevedo Román.

Inconforme, el 6 de septiembre de 2024, el apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula los siguientes planteamientos:

> Incurrió en error el Tribunal de Primera Instancia al constituir la novación de un contrato de compraventa para la adquisición de un bien inmueble en común proindiviso sin el consentimiento de un cónyuge que adquiriría el 50 porciento de la propiedad mientras el matrimonio se regía bajo el "Régimen de Absoluta separación de Bienes y Responsabilidades".

> Incurrió en error el Honorable Tribunal de Primera Instancia al declarar *No Ha Lugar* una moción de sentencia sumaria luego de permitirle a los apelados enmendar sus alegaciones mediante aseveraciones y argumentos traídos por primera vez en una moción suplementaria en oposición a moción de sentencia sumaria, la cual fue utilizada por el Tribunal para

enmendar la proposición de hechos incontrovertidos del apelante, motu proprio, a beneficio de los apelados, causando la desestimación de su demanda sobre desahucio sin celebración de un juicio plenario.

Incurrió en error el Honorable Tribunal de Primera Instancia al aceptar y darle un determinante peso probatorio a una declaración jurada en beneficio propio radicada por los apelados luego de haber concluido el descubrimiento de prueba.

Incurrió el Honorable Tribunal de Primera Instancia al no adjudicar una moción imprescindible titulada "Moción para que se dicte orden dejando sin efecto y/o se suprima la moción suplementaria en oposición a moción de sentencia sumaria" presentada por el apelante previo a la adjudicación del pleito en su expediente.

Incurrió en error el Honorable Tribunal de Primera Instancia al interpretar que el contrato de arrendamiento y opción de compra en disputa era un contrato bilateral de compraventa de un bien inmueble con precio aplazado.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, estamos en posición de expresarnos sobre la controversia que nos ocupa.

## II

### A

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa de que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980. De este modo, y debido a la

ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que

sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, págs. 432-433.

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales

y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Además, **en innumerables ocasiones nuestro Tribunal Supremo ha expresado que no procede una sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de la credibilidad es esencial**. *Carpets & Rugs v. Tropical Reps,* 175 DPR 615, 638 (200), *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301–302 (1994). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario

luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**B**

Por su parte, el Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751, dispone que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 9753; *VDE Corporation v. F&R Contractors,* 180 DPR 21, 33 (2010); *BPPR v. Sucn. Talavera,* 174 DPR 686, 693 (2008). Las obligaciones derivadas de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con lo acordado. 31 LPRA sec. 9754. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de

consentimiento, objeto y causa de la obligación que se establezca. 31 LPRA sec. 9771. Así, una vez perfeccionado, el mismo no sólo obliga a lo expresamente pactado, sino también a todas sus consecuencias de acuerdo a la buena fe, al uso y a la ley. 31 LPRA sec. 3375. Acreditadas dichas condiciones, los contratos rigen la conducta de todos los involucrados, no importa la forma en que los mismos se hayan celebrado. 31 LPRA sec. 3451; *Jarra Corp. v. Axxis Corp.,* 155 DPR 764, 772 (2001); *VELCO v. Industrial Serv. Apparel,* 143 DPR 243 (1997). De este modo, cuando un contrato es perfectamente legal, los tribunales de justicia están impedidos de relevar a una parte de acogerse a sus términos. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999); *Mercado, Quilichini v. UCPR,* 143 DPR 610 (1997). Sin embargo, **cuando no se ha presentado evidencia suficiente tendente a establecer su existencia o el alcance de sus disposiciones, el juzgador concernido vendrá obligado a auscultar la validez y extensión del contrato de que trate.** Así lo dispone el Artículo 354 del Código Civil de 2020, *supra,* cuando dispone que:

> [...]
>
> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
>
> [...]. 31 LPRA sec. 6342.

Es decir, la intención de las partes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. *VDE Corporation v. F&R Contractors,* 180 DPR 21, 35 (2010); *Marcial v. Tomé,* 144 DPR 522, 537 (1997); *Unisys v. Ramallo Brothers*, 128 DPR 842, 852–853 (1991). Por eso, el Tribunal Supremo ha expresado que "[e]l norte de la interpretación contractual es determinar cuál fue la real y común intención de las partes", *VDE*

*Corporation v. F&R Contractors,* supra, pág. 35 citando a *Municipio Mayagüez v. Lebrón,* supra, pág. 723. Por lo que "interpretar si un contrato es claro presupone concordar su letra con la intención de las partes". *Íd.*

Para auscultar la intención de los contratantes el Tribunal Supremo ha aplicado una metodología pragmática: estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes como el acuerdo que se intentó llevar a cabo. 31 LPRA sec. 6342; *VDE Corporation v. F&R Contractors,* supra, pág. 35.

### C

En lo concerniente, la *novación* constituye una de las causas de extinción de las obligaciones expresamente reconocidas por ley. 31 LPRA sec. 9421. Específicamente, consiste en la modificación de los términos de determinado vínculo, ya sea mediante la variación de su objeto o condiciones principales, de la persona del deudor, o mediante la subrogación de un tercero en los derechos del acreedor. 31 LPRA sec. 9422. Nuestro Tribunal Supremo ha reconocido que la novación incluye tanto la modalidad que tiene efectos extintivos, como la novación modificativa en virtud de la cual subsiste una obligación alterada. *PDCM Assoc. v. Najul Bez,* 174 DPR 716, 725 (2008); *Mun. De San Juan v. Prof. Research,* 171 DPR 219 (2007); *United v. Villa,* 161 DPR 609 (2004).

La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. 31 LPRA sec. 9423. En otras palabras, la novación extintiva es una figura que provee para la extinción de una obligación preexistente entre determinadas partes y, en consecuencia, para el nacimiento de una nueva que regirá su

relación jurídica. J.R. Vélez Torres, *Derecho de Obligaciones: Curso de Derecho Civil,* Segunda Edición, San Juan, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1997, pág. 225. Así, el estado de derecho dispone que la novación debe cumplir con lo siguiente para que sea de carácter extintivo: 1) existencia de una obligación original válida que se extingue, 2) existencia de una obligación nueva que nace y que discrepa con la antigua y; 3) la existencia de un *animus novandi,* es decir, la voluntad expresa o tácita encaminada a la extinción de la obligación primitiva. *Op. cit.,* págs. 225-227.

Por otra parte, se concreta la novación modificativa de una obligación cuando se producen cambios secundarios o de poca envergadura respecto a un vínculo particular y los mismos no tienen el efecto de suprimir el pacto original. *Warner Lambert v. Tribunal.* 101 DPR 378 (1973). En *P.D.C.M. Assoc. v. Najul Bez,* 174 DPR 716, 726 (2008) el Tribunal Supremo dispuso que:

> [L]a novación modificativa no exige encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar un ánimo de cambio. **De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes**. Ello, debido a que la novación encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. *Warner Lambert Co. v. Tribunal Superior,* supra, pág. 389.

Por último, debemos señalar que el Tribunal Supremo ha establecido varias pautas interpretativas sobre la figura de la novación, entre estas: (1) que **la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda**; (2) que la novación es siempre una cuestión de intención, que deberá inferirse de las circunstancias que rodean cada caso en particular; (3) que la doctrina puntualiza el elemento de la voluntad de las partes como uno determinante de la novación; y (4) que por razón de que la extinción de la obligación conlleva la extinción de las garantías y

demás derechos accesorios, esta solo puede producirse cuando las partes han tenido clara conciencia de ello. *Constructora Bauzá Inc., v. García López*, 129 DPR 579, 598 (1991); *Warner Lambert Co. v. Tribunal Superior*, supra, págs. 391–392.

**III**

En su recurso, el apelante Cortés Valle sostiene que el Tribunal de Primera Instancia erró al concluir que el contrato suscrito entre las partes el 2 de marzo de 2021, constituía en realidad una compraventa con precio aplazado. Aduce que el foro primario adjudicó la naturaleza del negocio jurídico sin la celebración de una vista evidenciaria, haciendo determinaciones sobre la intención de las partes que no podían resolverse mediante el mecanismo sumario. Examinada la sentencia apelada y los documentos del expediente, limitamos nuestro análisis al quinto error esgrimido, el cual resulta determinante para la adecuada disposición del recurso. Los demás señalamientos no ameritan discusión adicional, en tanto no alteran la conclusión a la que este Foro llega. Así, habiendo entendido sobre el antedicho señalamiento a la luz de las particularidades del caso y de la norma aplicable, resolvemos revocar la *Sentencia Parcial* apelada.

En principio, conforme esbozáramos, el estado de derecho reconoce que, al examinar un dictamen emitido por el Foro primario, ello en cuanto a una solicitud sobre sentencia sumaria, el Tribunal de Apelaciones está en igual condición que el Tribunal de Primera Instancia para entender sobre sus méritos. A tal fin, el empleo de nuestras facultades constituye una revisión *de novo,* que nos sujeta a los términos y exigencias de la Regla 36 de Procedimiento Civil, *supra*, y nos permite entender sobre toda la evidencia documental que acompaña la moción dispositiva pertinente, así como a su escrito en oposición. Por lo tanto, nos corresponde determinar si la *Moción Solicitando Sentencia Sumaria* presentada por el apelante y

las mociones en oposición presentadas por la parte apelada, entiéndase la *Moción en Oposición a Solicitud de Sentencia Sumaria* y la *Moción Suplementaria en Oposición a Moción de Sentencia Sumaria,* cumplen con los requisitos establecidos en la Regla 36 de Procedimiento Civil, *supra.* Acto seguido, debemos determinar si, en el presente caso, existen hechos materiales en controversia que impiden la solución al petitorio sumario.

Al examinar la *Moción Solicitando Sentencia Sumaria* presentada por el apelante, surge que este desglosó en párrafos por separado los hechos que a su juicio estaban incontrovertidos y relacionó la prueba que servía de apoyo a su contención. Por lo tanto, concluimos que el apelante cumplió con lo estatuido en la Regla 36.3(a)(4) de Procedimiento Civil, *supra.* Por su parte, conviene señalar que, al presentar la *Moción en Oposición a Solicitud de Sentencia Sumaria,* la parte apelada no cumplió con las exigencias formales de la Regla 36.3(b)(2) de Procedimiento Civil, *supra,* pues no desglosó los párrafos según enumerados por el promovente, que entendía controvertidos, ni identificó mediante referencias específicas a la prueba, cada uno de los hechos que alegadamente estaban en controversia. No obstante, al examinar la *Moción Suplementaria en Oposición a Moción de Sentencia Sumaria* presentada por la parte apelada, en esta desglosó los párrafos según enumerados por el promovente que entendía controvertidos e identificó, mediante referencias específicas a la prueba, cada uno de los hechos que alegadamente estaban en controversia. Por lo tanto, cumplió con las exigencias formales de la Regla 36.3(b)(2) de Procedimiento Civil, *supra.*

Ahora bien, un examen de la evidencia contenida en los aludidos pliegos nos lleva a concluir que, existe una genuina controversia de hechos que, impide la preterición del cauce ordinario de los procedimientos. A nuestro juicio, los documentos que tuvimos

a nuestro haber revisar evidencian que existe controversia sobre la intención de las partes al suscribir el contrato intitulado *Arrendamiento y Opción de Compra*, el 2 de marzo de 2021. Específicamente, intimamos que se hace preciso auscultar si el acuerdo suscrito entre las partes fue un arrendamiento con opción a compra o si, como propone la parte apelada, hubo una simulación contractual desde el comienzo. También corresponde dirimir qué efecto, si alguno, tuvo la comunicación llevada a cabo entre la señora Román Torres y el señor Cortés Valle y si esto novó la obligación contractual. Tales asuntos requieren la celebración de un juicio en su fondo para que el Tribunal de Primera Instancia reciba la prueba pertinente, valore la credibilidad de los testigos y adjudique, la naturaleza jurídica del negocio en controversia. No podemos perder de perspectiva que, **nuestro ordenamiento jurídico reconoce que el uso del mecanismo procesal de sentencia sumaria es limitado cuando el asunto involucra elementos de intención, propósitos mentales o cuando el factor de la credibilidad es esencial.** *Carpets & Rugs v. Tropical Reps.*, supra, pág. 638.

Al examinar las determinaciones de hechos que el Tribunal de Primera Instancia identificó como incontrovertidas, disponemos que, tal cual dispuso, no existe controversia en cuanto a los siguientes hechos:

1. La demandante Karla Marie Román Torres es mayor de edad, casada con el señor Orvin Joel Acevedo Ruiz, es comerciante y vecina de Aguada, Puerto Rico.
2. El demandante Orvin Joel Acevedo Ruiz es mayor de edad, casado con la señora Karla Marie Román Torres, es comerciante y vecino de Aguada, Puerto Rico.
3. Los bienes del matrimonio compuesto por los demandantes están organizados y administrados bajo el "Régimen de Absoluta Separación de Bienes y Responsabilidades".
4. El dueño registral de la propiedad en cuestión es el señor Juan Cortés Valle, parte demandada de epígrafe. El inmueble está localizado en el sector Villa Ofelia del Barrio Piedras Blancas del término municipal de Aguada, Puerto Rico y consta inscrito al folio 271 del tomo 259 de Aguada, finca número 14,108, en el Registro de la Propiedad de Aguadilla, con número de

catastro 096-020-209-97-000. La propiedad se describe a continuación:

RÚSTICA: Predio de terreno sito en el Barrio Piedras Blancas del término municipal de Aguada, Puerto Rico, identificado como solar número dos (2), con una cabida superficial de NOVECIENTOS VEINTIOCHO PUNTO SETECIENTOS ONCE METROS CUADRADOS (928.711 M.C.) en lindes por el NORTE, con área dedicada a uso público, al SUR, con Adalberto E. Moret y Elvis Galloza Acevedo, al ESTE, con solar número uno (1) y OESTE, con solar número tres (3).

Enclava una casa para fines residenciales.

5. La propiedad tiene una hipoteca constituida a favor de Baxter Credit Union.

6. El 2 de marzo de 2021, las partes en el pleito de marras suscribieron un documento titulado: "ARRENDAMIENTO Y OPCIÓN DE COMPRA".

7. El referido documento consta de seis (6) páginas y contiene un inciso "A. Con relación al CONTRATO DE ARRENDAMIENTO", y un inciso "B. Con relación al CONTRATO DE OPCIÓN DE COMPRAVENTA".

8. En la parte B con relación al CONTRATO DE OPCIÓN DE COMPRAVENTA, los demandantes se obligaron a aportar la suma de setenta y cinco mil quinientos noventa dólares con veinte centavos ($75,590.20) como depósito de la Opción.

9. El precio pactado de compraventa fue de TRESCIENTOS QUINCE MIL DÓLARES ($315,000.00).

10. El demandado recibió la suma de SETENTA Y CINCO MIL QUINIENTOS NOVENTA DÓLARES CON VEINTE CENTAVOS ($75,590.20).

[...]

14. En un momento dado hubo una disminución en el pago de la hipoteca de diez dólares con cuarenta y tres centavos ($10.43) hecho que el demandado notificó a los demandantes para que redujeran dicha suma.

15. El pago hipotecario actual de la propiedad es de mil doscientos cuarenta y ocho dólares con quince centavos ($1,248.15).

[...]

18. El señor Cortés Valle es el asegurado principal de una póliza de seguro vigente de tipo "Homeowners" emitida por la Cooperativa de Seguros Múltiples de Puerto Rico.

19. El término del contrato fue de dieciocho (18) meses a partir del primero (1) de marzo de 2021 y finalizando el treinta y uno (31) de agosto de dos mil veintidós (2022), con opción para extender el mismo por seis (6) meses adicionales.

20. El contrato estipulaba que la extensión del contrato debía ser por escrito.

21. El señor Cortés Valle y la señora Román Torres se comunicaban mediante mensajes de texto.

22. La señora Román Torres era quien se comunicaba con el señor Cortés Valle.

23. El 31 de agosto de 2022, a las 4:07 p.m., la señora Román Torres le envió un mensaje de texto al demandado, indicándole que le notificaría tan pronto la cooperativa le informara cuando sería el cierre. A las

4:08 p.m., el señor Cortés Valle le contestó: "Claro, Gracias.".

[...]

25. El 21 de octubre de 2022, Agua Coop denegó la solicitud del préstamo hipotecario presentada por los demandantes luego de una revisión efectuada por su Junta de Directores.

26. El 28 de noviembre de 2022, los demandantes recibieron un estimado sobre una solicitud de préstamo hipotecario de la Cooperativa de Ahorro y Crédito de Rincón (Coop Rincón).

27. El 16 de marzo de 2023, a las 9:28:30 a.m., el Oficial de Originación de Hipotecas de Coop Rincón, el señor Alex L. Del Valle Aldebol, le comunicó el "ESTATUS" de la solicitud del préstamo hipotecario descrito en el párrafo anterior a la señora Román Torres y le indicó que del comité de crédito le estaban solicitando una serie de documentos necesarios para la evaluación del préstamo hipotecario solicitado, especificando cada uno de estos.

28. El 19 de febrero de 2023, a las 11:06:18 a.m., el demandado le cursó una misiva a la parte demandante solicitándole, entre otras cosas, que remitieran un pago por la suma de $1,250.20 para completar el canon de arrendamiento solicitado de $2,500.00 mensuales, efectivo el mes de febrero 2023 y solicitándole el desalojo de la propiedad en o antes del 28 de febrero de 2023.

Sin embargo, advertimos que, al concluir sumariamente que el negocio jurídico celebrado entre las partes el 2 de marzo de 2021 constituía una compraventa con precio aplazado, el Tribunal de Primera Instancia adjudicó como incontrovertidos asuntos para los cuales la documentación presentada no demuestra la total inexistencia de una genuina controversia de hechos. Veamos.

La determinación consignada en el hecho número 11, a los efectos de que la suma de $75,590.20 correspondía a un pago adelantado del precio de compraventa, no se sostiene en la documentación presentada. El contrato estipula expresamente que dicha cantidad constituía un depósito de opción, y en el expediente no obra prueba que demuestre que las partes acordaron alterar esa clasificación o imputarla como precio de compraventa. Por lo tanto, la naturaleza jurídica del pago de la suma de $75,590.20 y su posible imputación al precio de compraventa permanece en controversia.

Del mismo modo, los hechos números 12, 13 y 17 contienen determinaciones que no encuentran apoyo en el contrato suscrito entre las partes, ni en la evidencia documental ante nuestra consideración. Aun cuando del expediente de autos se desprende que la parte apelada realizó pagos mensuales, la naturaleza jurídica de estos, entiéndase, si eran en abono al precio de compraventa o si eran en concepto del canon de arrendamiento, se encuentra en controversia. Por lo tanto, el foro de primera Instancia erró al afirmar que los pagos efectuados fueron en abono al precio de compraventa.

Asimismo, el hecho número 16, en el cual el Tribunal concluyó que la intención del apelante era vender la propiedad y no arrendarla, también se encuentra en controversia. El anuncio previo de venta efectuado por el apelante, no es determinante para concluir que el negocio jurídico celebrado entre las partes el 2 de marzo de 2021, desde su origen, fue una compraventa con precio aplazado. Enfatizamos que en el expediente de autos obran alegaciones de la propia parte apelada en las cuales reconoce que no podía comprar la propiedad para la fecha en la que firmó el contrato. Así pues, reafirmamos que la intención de las partes al obligarse debe dirimirse, mediante la celebración de una vista en su fondo.

Finalmente, la determinación contenida en el hecho número 24, en la cual el foro primario concluyó que la parte apelada solicitó financiamiento para el pago del balance de la "propiedad comprada",[5] presupone que la compraventa se perfeccionó, conclusión que no surge del contrato en controversia ni de la evidencia presentada.

Todo lo anterior expone la necesidad de auscultar, con mayor rigor, la veracidad de los respectivos argumentos de las partes, a los

---

[5] Apéndice del recurso, pág. 284.

efectos de legítimamente resolver la naturaleza jurídica del negocio celebrado y, por consiguiente, la naturaleza jurídica de los pagos realizados durante la vigencia de la relación contractual. Estas controversias, íntimamente vinculadas a la intención de las partes al contratarse, al ejercicio de la opción y a la alegada novación, no pueden resolverse sumariamente y requieren la celebración de una vista en su fondo para que el Tribunal de Primera Instancia pueda recibir prueba, aquilatar credibilidad de los testigos y adjudicar la verdadera naturaleza del acuerdo.

En adición a los hechos materiales que están en controversia, es menester señalar que la determinación del Tribunal de Primera Instancia incurre en una incompatibilidad lógica que impide sostener la disposición sumaria del asunto. Nos explicamos.

Según surge de la *Sentencia Parcial* apelada, en el caso civil AU2023CV00129, el Tribunal concluyó que las comunicaciones entre la señora Acevedo Román y el apelante novaron la obligación original, particularmente en cuanto al término contractual. Tal premisa presupone la existencia de una obligación vinculada a un contrato de opción, que fue objeto de novación. No obstante, en el caso civil AU2023CV00106, el propio Tribunal declaró inexistente ese acuerdo de arrendamiento con opción de compra y sostuvo que el instrumento suscrito el 2 de marzo de 2021 constituía, desde su origen, una compraventa perfeccionada con precio aplazado. Esta contradicción —de sostener que el alegado contrato de opción de compra fue objeto de novación y, acto seguido, concluir que tal contrato nunca existió— es insalvable, pues ninguna obligación puede ser novada si, a tenor con el propio Tribunal, nunca existió. A ello se añade que el Tribunal de Primera Instancia dispuso sumariamente del asunto aun cuando, en su *Moción Suplementaria en Oposición a Moción de Sentencia Sumaria*, la parte apelada solicitó expresamente que el caso se tramitara por la vía ordinaria a fin de

que el Tribunal tuviera la oportunidad de recibir y aquilatar prueba y adjudicar la credibilidad de los testigos.

En conclusión, ante documentos y declaraciones juradas que establecen teorías conflictivas sobre la intención de las partes al suscribir el contrato en controversia, la única opción que tenía el Tribunal de Primera Instancia era auscultar la intención de los contratantes, a través del estudio de los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes. Esto solo se podrá lograr a través de la celebración de un juicio plenario para tener la oportunidad de aquilatar prueba y adjudicar la credibilidad de los testigos.

En mérito de todo lo antes expuesto, *revocamos* la *Sentencia Parcial* apelada y se ordena que el Foro primario celebre una vista en su fondo, a fin de que pueda auscultar la verdadera intención de las partes al contratarse, valorar la prueba pertinente y adjudicar la naturaleza jurídica del negocio, conforme a los criterios procesales y sustantivos que gobiernan este tipo de controversias.

**IV**

Por los fundamentos que anteceden, se *revoca* la sentencia apelada en lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones